1    John E. Spomer III, SBN 204938
Shauna N. Correia, SBN 232410
2    BULLIVANT HOUSER BAILEY PC
1415 L Street, Suite 1000
3    Sacramento, California  95814
Telephone: 916.930.2500
4    Facsimile: 916.930.2501
E-Mail: john.spomer@bullivant.com
5
Attorneys for Plaintiffs JAMES R. ALBERTS
6    and BRIAN CAMERON

7

8                  **UNITED STATES DISTRICT COURT**

9                  **EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  JAMES R. ALBERTS and BRIAN CAMERON, | **Case No.:** |
| 11                      Plaintiffs, | **COMPLAINT FOR:** |
| 12      vs. | 1) **Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder;** |
| 13  RAZOR AUDIO, INC., and DOES 1 | 2) **Violation of Section 20(a) of the Securities Exchange Act of 1934;** |
| 14  THROUGH 10, inclusive, | 3) **Violation of California Corporations Code §§ 25401 and 25501;** |
| 15                      Defendants. | 4) **Violation of California Corporations Code § 25504;** |
| 16 | 5) **Fraudulent Misrepresentation;** |
| 17 | 6) **Negligent Misrepresentation;**<br>7) **Breach of Contract; and** |
| 18 | 8) **Unjust Enrichment** |
| 19 | **DEMAND FOR JURY TRIAL** |

20       Plaintiffs James R. Alberts and Brian Cameron (collectively, "Plaintiffs") bring this

21 Complaint against Defendant Razor Audio, Inc., a Delaware corporation, with its principal place

22 of business in Folsom, California ("Defendant").  Plaintiffs allege as follows:

23                     **JURISDICTION AND VENUE**

24       1.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §

25 1331 and Section 27 of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §

26 78aa) because this action arises out of violations of the Exchange Act as set forth more fully

27 herein.  This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332

28 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000,

1 exclusive of interest and costs.

2     2.    Defendant is subject to the personal jurisdiction of this Court because, among

3 other things, Defendant purposefully availed itself of the benefits of the laws of the state of

4 California by doing business in the State of California and because its principal place of

5 business is located in the State of California.

6     3.    Venue in the Eastern District of California is appropriate under 28 U.S.C. Section

7 1391(b)(2) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Defendant's

8 principal place of business is located within this District, Defendant transacts business in this

9 District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this

10 District.

11 **THE PARTIES**

12     4.    Plaintiffs James R. Alberts and Brian Cameron are individuals who reside in the

13 State of Washington.

14     5.    Defendant Razor Audio Inc., is a Delaware corporation in good standing, with its

15 principal place of business in Folsom, Sacramento County, State of California.

16     6.    The true names and capacities, whether individual, corporate, associate or

17 otherwise, of Defendants named herein as "DOES 1-10, inclusive," are unknown to Plaintiffs,

18 who therefore sues said Defendants by such fictitious names.  Plaintiffs will amend this

19 Complaint to allege their true names and capacities when they have been ascertained.

20 Whenever in this Complaint Defendant Razor Audio, Inc. is the subject of any charging

21 allegation, the fictitiously named Defendants are also responsible thereunder of the charging

22 allegations.

23     7.    On information and belief, Plaintiffs allege that at all times herein mentioned,

24 Defendants "DOES 1-10, inclusive," were the officers, directors, agents, affiliated persons

25 and/or employees of Defendant Razor Audio, Inc. and were acting within the scope of said

26 representative capacity and agency.  On further information and belief, Plaintiffs alleges that

27 each Defendant, including those identified as DOES, ratified each and every act of all remaining

28 Defendants, including those identified as DOES.

**GENERAL ALLEGATIONS**

1

2   8.   Plaintiffs James R. Alberts and Brian Cameron are orthopedic surgeons and

3   business partners, who reside in the State of Washington.

4   9.   Defendant Razor Audio Inc., doing business as "Razor Audio Solutions", is a

5   fledgling audio technology enterprise, incorporated in late 2007.  Defendant holds itself out as a

6   manufacturer and retailer of home audio sound and speaker products, including flat panel or

7   "pleated panel" speakers that can be placed in the wall or ceiling of a consumer's home.

8   10.   As a start-up company, Defendant was in dire need of raising capital to get its

9   initial operations up and running.  Throughout the first half of 2008, Defendant began to look

10   for ways to raise capital.  To assist in the financing process, Defendant, through its Chief

11   Executive Officer ("CEO") Tom Alberts (who is the brother of Plaintiff James R. Alberts),

12   began recruiting potential investors.

13   11.   At all relevant times herein, Tom Alberts acted on behalf of Defendant as its

14   CEO, and he did so with Defendant's actual and/or apparent authority.  For example, in an

15   article about Defendant's business, published April 22, 2008 in the *Sacramento Bee*, Tom

16   Alberts was identified as Defendant's CEO.  Another article that discussed Defendant's

17   business, published May 30, 2008 in the *Sacramento Business Journal*, included an interview

18   with Tom Alberts, who was again identified as Defendant's CEO.  The article also included an

19   interview with Jacob Jorgensen, who was described as a general partner at Velocity Venture

20   Capital—the lead investor in Defendant—and, according to the informational materials

21   described in paragraph 12, below, was a member of Defendant's Board of Directors at the time.

22   Tom Alberts also was interviewed on two separate occasions by local news telecasts, who

23   identified him as the CEO of Defendant.

24   12.   Before meeting with potential investors, Defendant prepared informational

25   materials about itself, its operations and business strategy.  The materials also provided detailed

26   information about the backgrounds of several key officers and directors of the company,

27   including Tom Alberts (again identified as Defendant's CEO), Henry "Monty" Montgomery

28   (identified as Defendant's Chief Financial Officer), and Jack Crawford and Jacob Jorgensen

1   (both identified as members of Defendant's Board of Directors).

2       13.    In or about early June 2008, Tom Alberts approached Plaintiffs about an

3   investment opportunity with Defendant and informed them that he was the company's CEO.

4       14.    Shortly thereafter, Tom Alberts, via electronic mail, provided Plaintiffs with

5   copies of the aforementioned informational materials about Defendant.

6       15.    At that time, Tom Alberts represented to Plaintiffs that if they invested money in

7   Defendant, Defendant would issue each of them a written convertible promissory note from the

8   company, the principal amount of which could be converted into shares of stock in Defendant

9   upon the terms and conditions therein. For every $100,000 invested, Plaintiffs would have the

10  option to convert their investment into a 1% ownership interest in the company.

11      16.    In conjunction with the aforementioned representations, Defendant provided

12  Plaintiffs, and each of them, via electronic mail: (1) a document entitled "Razor Audio Solutions

13  Market Segmentation Analysis", (2) a document entitled "RAZOR AUDIO, INC. Convertible

14  Note Investor Status Questionnaire," and (3) a document entitled "CONVERTIBLE

15  PROMISSORY NOTE".

16      17.    The document entitled "Razor Audio Solutions Market Segmentation Analysis"

17  was a lengthy document prepared by Kiauna Norman, Charles Nelson and Jeff Lamport, who

18  were executive MBA candidates at the California State University of Sacramento and conducted

19  the analysis as part of an MBA program with Velocity Venture Capital. Jack Crawford, the

20  general partner of Velocity Venture Capital, was not only an instructor in the program but was

21  also a member of Defendant's Board of Directors at the time. The Market Segmentation

22  Analysis identifies Tom Alberts as the CEO of Defendant, and it reviews ten market segments

23  as potential avenues for Defendant to expand its product line into.

24      18.    The document entitled "RAZOR AUDIO, INC. Convertible Note Investor Status

25  Questionnaire," was a six-page document that solicited certain information regarding Plaintiffs'

26  financial status to determine whether they each were an "Accredited Investor," as defined under

27  applicable federal and state securities laws, and otherwise met the suitability criteria established

28  by Defendant for purchasing shares therein (the "Questionnaire").

19. The document entitled "CONVERTIBLE PROMISSORY NOTE," was a four-page document that contained the salient provisions of a convertible promissory note between Defendant and the holder of the note with blank spaces that allowed for the amount of the note and its maturity date to be inserted prior to its execution by Defendant (the "Note").

20. After reviewing the aforementioned materials and based on the representations made to them by Defendant, through Tom Alberts, Plaintiffs decided to invest a substantial sum of money with the company.

21. On June 13, 2008, Plaintiff James R. Alberts wire transferred $50,000 from his personal bank account and into Defendant's bank account located at the Wells Fargo Bank in Folsom, California.

22. On July 2, 2008, Plaintiff Brian Cameron wire transferred $100,000 from his personal bank account and into Defendant's bank account located at the Wells Fargo Bank in Folsom, California.

23. Despite its aforementioned promises, however, Defendant did not execute and return the Notes to Plaintiffs.

24. For months afterwards, Plaintiffs attempted to contact Defendant to get an update on the status of the issuance of the Notes. Defendant did not respond.

25. Finally, on or about November 15, 2008, Henry Montgomery called Plaintiff Brian Cameron about his investment. Mr. Montgomery stated that he was now acting as the company's CEO and that Tom Alberts had been removed as CEO in September 2008. Mr. Montgomery also asked Dr. Cameron to fill in the blank spaces on his form Note with the date and amount of the investment and to return the Note to the Defendant for execution.

26. Three days later, Dr. Cameron faxed the completed Note to Defendant, at Mr. Montgomery's attention, for execution.

27. A few weeks later, concerned and frustrated that he never received the executed Note from Defendant or any further update regarding his investment, Dr. Cameron contacted Mr. Montgomery via telephone and by e-mail to request that Defendant return his investment of $100,000. Mr. Montgomery responded via e-mail that he would work on Dr. Cameron's request

1    and get back to him with a plan for returning the investment.

2         28.     Meanwhile, concerned that Defendant was not even aware that he was an

3    investor, Plaintiff James R. Alberts e-mailed Mr. Montgomery and asked for a status on his

4    investment and Defendant's business plan.

5         29.     In early December 2008, Plaintiffs and Mr. Montgomery had a telephone

6    conference call to discuss their investments and the status of the company.  Mr. Montgomery

7    informed Plaintiffs that because of patent issues, the company was no longer going to market

8    flat panel speakers; rather, it was going to focus on a new product, "pleated panel" speakers.  He

9    also stated that Defendant intended to make a presentation at a trade show in January 2009 to

10   measure the interest in the "pleated panel" concept and that he would update Plaintiffs

11   afterward.

12        30.     Growing increasingly frustrated that Defendant still had not issued him the Note

13   as promised, and unsure of the company's new strategic direction, Dr. Alberts e-mailed Mr.

14   Montgomery a few weeks later and asked for the return of his $50,000 investment.  Mr.

15   Montgomery did not reply.

16        31.     Over the course of the next several months, Plaintiffs continued to demand the

17   return of the money they deposited in Defendant's bank account.  Again, however, Defendant

18   did not respond.

19        32.     Finally, on or about June 17, 2009, Plaintiffs had a telephone conference call

20   with Mr. Montgomery and Jacob Jorgensen, who was now the purported CEO of the company.

21   During the call, Mr. Montgomery and Mr. Jorgensen attempted to placate Plaintiffs in response

22   to their demand for the return of their money by ensuring them that they each still had a viable

23   investment in the company and that Defendant would be providing them with quarterly updates

24   about the status of the business and their investment.  These statements, however, did little to

25   appease the concerns of Plaintiffs, who learned the following information during the course of

26   the call:

27         •    Defendant had exhausted the full sum of $150,000 that Plaintiffs had deposited

28              into the company's bank account;

- Defendant had little or no capital remaining and was trying to find a way to recapitalize;
- Defendant would not issue the Notes to Plaintiffs because neither their investments nor Tom Alberts' actions in recruiting investors were accepted or ratified by Defendant's Board of Directors;
- Despite Defendant's solicitation and acceptance of investments and its change of strategic direction in 2008, Defendant did not hold a single meeting of its Board of Directors that year; and
- When Plaintiffs asked to see Defendant's financial statements, Mr. Montgomery admitted that the company had not been keeping any formal financial records or statements.

33.     After this conversation in June 2009, Defendant never communicated with Plaintiffs again.  It never responded to Plaintiffs' numerous requests for the return of their money nor did it provide any update as to the state of the business.

34.     Defendant's conduct throughout has been egregious at best.  Needing to raise capital, it purposefully solicited investments from Plaintiffs.  In exchange for these investments, Defendant promised to issue convertible promissory notes, i.e., the "Notes," to Plaintiffs.  In reliance on this representation, Plaintiffs deposited a substantial sum of money into Defendant's bank account.  Defendant, however, never issued the Notes to Plaintiffs and now hides behind the convenient excuse that Plaintiff's investments were never ratified by the Defendant's Board of Directors.  The alleged non-ratification of these investments, however, did not stop Defendant from accepting the money, spending all of it, and now refusing to return any of these funds to Plaintiffs.

35.     Defendant's misrepresentations in soliciting Plaintiffs' investments were made intentionally or with deliberate recklessness to induce Plaintiffs into depositing a substantial sum of money in Defendant's bank account, with no intention or effort to issue the agreed-upon securities. Defendant never intended to issue the Notes to Plaintiffs and knew it could not issue them – a fact made clear by its failure to take any action to ratify the investments after they were

1  accepted by the company and the funds were being spent, and further confirmed by Defendant's

2  refusal to return the money to Plaintiffs or communicate with them in any manner over the last

3  year.

4         36.    If Defendant did not intend to mislead Plaintiffs into believing they each had a

5  viable investment, it would either have issued the Notes or returned their money.  It also would

6  not have continued to string Plaintiffs along by repeatedly maintaining that they each had a

7  legitimate investment in the company.  But by keeping and spending their investment, refusing

8  to issue the Notes, and ceasing all communication with Plaintiffs, it has confirmed its intent to

9  defraud Plaintiffs for its own benefit.

10         37.    On November 10, 2009, Plaintiffs, via their counsel, sent a letter to Mr.

11  Jorgensen, demanding once more that Defendant immediately return the money Plaintiffs

12  deposited in Defendant's bank account.  True to its non-communicative nature, Defendant did

13  not honor Plaintiffs' correspondence with any response whatsoever.

14                         **CAUSES OF ACTION**

15                         **FIRST CAUSE OF ACTION**

16         **(Against Defendant Razor Audio, Inc. For Violation of Section 10(b) of the**

17             **Securities Exchange Act of 1934 and Rule 10b-5 thereunder)**

18         38.    Plaintiffs re-allege and incorporate by this reference paragraphs 1-37 as though

19  fully set forth herein.

20         39.    Defendant, directly and indirectly through its agents and representatives, and by

21  use of a means or instrumentality of interstate commerce, or of the United States mails,

22  electronic mail, facsimile or telephone, employed a device or scheme to defraud Plaintiffs; made

23  untrue statements of material facts; omitted to state material facts necessary to make the

24  statements that Defendant made to Plaintiffs, in light of the circumstances under which they

25  were made, not misleading; and engaged in acts, practices, and a course of business that

26  operated as a fraud and deceit on Plaintiffs in connection with the offer and sale of a "security"

27  within the meaning of the Exchange Act.  Defendant thereby violated Section 10(b) of the

28  Exchange Act (15 U.S.C. § 78j(b)) and Rule 10(b)-5 (17 C.F.R. § 240.10b-5) promulgated

1    thereunder, as set forth in this Complaint.

2        40.    Plaintiffs are informed and believe and thereon allege that at all times mentioned

3    in this Complaint, Tom Alberts, Henry Montgomery and Jacob Jorgensen were acting as agents

4    of Defendant in the ordinary course of its business.

5        41.    To induce Plaintiffs to invest in the company, Defendant, through its agents, and

6    by its conduct, statements and omissions, made the following misrepresentations of material

7    facts to Plaintiffs, including but not limited to the following:

8            a.    In or about June 2008, Tom Alberts represented to Plaintiffs via

9    telephone and e-mail that if they invested money in Defendant, Defendant would issue to

10   Plaintiffs, and each of them, a Note whereby the principal amount could be converted into

11   shares of stock in Defendant upon the terms and conditions therein.

12           b.    In or about June 2008, Tom Alberts represented to Plaintiffs via

13   telephone and e-mail that the Notes issued would be substantially similar to the form Note that

14   Defendant provided each Plaintiff.

15           c.    In or about June 2008, Tom Alberts represented to Plaintiffs via

16   telephone and e-mail that Defendant had the corporate authority to issue the Notes to Plaintiffs.

17           d.    In November 2008, Henry Montgomery represented to Plaintiff Brian

18   Cameron via telephone that if he completed the form Note and returned it to him, Defendant

19   would execute said Note.

20           e.    In November and December 2008 and again in June 2009, after Plaintiffs

21   deposited their money in Defendant's bank account, Henry Montgomery and Jacob Jorgensen

22   represented to Plaintiffs via telephone that they each had a viable investment in Defendant.

23       42.    The above-mentioned representations were untrue, the true facts being as

24   follows:

25           a.    With the intention of investing in Defendant, Plaintiff James R. Alberts

26   deposited $50,000 in Defendant's bank account, and Plaintiff Brian Cameron deposited

27   $100,000 in Defendant's bank account.

28   ///

b.      Defendant, in desperate need of capital, accepted the collective sum of $150,000 that Plaintiffs deposited in its bank account and spent all of it.

c.      Defendant never issued the Notes to Plaintiffs.

d.      Defendant never intended to issue the Notes and knew it lacked the requisite corporate authority to do so.

e.      Defendant refuses to return the collective sum of $150,000 to Plaintiffs and has not communicated with Plaintiffs in any manner since June 2009.

f.      Defendant's failure to issue the Notes to Plaintiffs rendered their investments in the company worthless.

43.      The misstatements, misrepresentations and omissions referred to herein are of material facts under Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10(b)-5 (17 C.F.R. § 240.10b-5) promulgated thereunder because they concern matters a reasonable investor would consider in deciding to invest.

44.      Defendant acted intentionally, or with a deliberately reckless disregard for the truth, in making the aforementioned representations in an effort to induce Plaintiffs to transfer a significant sum of money into the Defendant's bank account.  Defendant knowingly concealed and withheld the true material facts from Plaintiffs, which facts were necessary to make the representations made to Plaintiffs not misleading.

45.      Plaintiffs, and each of them, did not know, or in the exercise of due diligence could not have known, of Defendant's misstatements, misrepresentations and omissions, as set forth in this Complaint, at the time they were made.

46.      In reliance on the misrepresentations of Defendant and in ignorance of the true facts, Plaintiff James R. Alberts wire transferred $50,000 into Defendant's bank account, and Plaintiff Brian Cameron wire transferred $100,000 into Defendant's bank account.

47.      As a direct and proximate result of the misrepresentations, concealment, and fraud of Defendant, and its failure to issue the Note, Plaintiff James R. Alberts suffered loss and damage in an amount of $50,000, plus interest and costs to be determined.

///

**COMPLAINT**

1    48.    As a direct and proximate result of the misrepresentations, concealment, and

2  fraud of Defendant, and its failure to issue the Note, Plaintiff Brian Cameron suffered loss and

3  damage in an amount of $100,000, plus interest and costs to be determined.

4        WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

5                      **SECOND CAUSE OF ACTION**

6        **(Against DOES 1-10 For Violation of Section 20(a) of the Securities**

7                          **Exchange Act of 1934)**

8    49.    Plaintiffs re-allege and incorporate by this reference paragraphs 1-48 as though

9  fully set forth herein.

10    50.    DOES 1-10, and each of them, are liable for the above-stated violations of

11  Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10(b)-5 (17 C.F.R. § 240.10b-

12  5) promulgated thereunder because they were controlling persons of Defendant under Section

13  20(a) of the Exchange Act (15 U.S.C. § 78t(a)).

14    51.    DOES 1-10 were, at all relevant times, officers, directors, agents, affiliated

15  persons, and/or employees of Defendant.

16    52.    Plaintiffs, and each of them, suffered damages as a result of the violations of

17  Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10(b)-5 (17 C.F.R. § 240.10b-

18  5) promulgated thereunder by Defendant, of which DOES 1-10 were control persons.

19    53.    Plaintiffs, and each of them, did not know, or in the exercise of due diligence

20  could not have known, of the misstatements, misrepresentations and omissions made by

21  Defendant, as set forth in this Complaint, at the time they were made.

22    54.    By reason of the foregoing, Defendant is primarily liable under Section 10(b) of

23  the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10(b)-5 (17 C.F.R. § 240.10b-5) promulgated

24  thereunder, and DOES 1-10, and each of them, are jointly and severally liable as control persons

25  under Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)) to Plaintiffs.

26        WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

27  ///

28  ///

**THIRD CAUSE OF ACTION**

**(Against Defendant Razor Audio, Inc. For Violation of California**

**Corporations Code §§ 25401 and 25501)**

55.     Plaintiffs re-allege and incorporate by this reference paragraphs 1-54 as though fully set forth herein.

56.     Under California Corporations Code § 25401, "[i]t is unlawful for any person to offer or sell a security in this state … by means of any written or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

57.     Defendant was an offeror and/or seller of securities to Plaintiffs under California Corporations Code Section 25401.

58.     As more specifically set forth in paragraphs 41-42 of this Complaint, Defendant, directly or indirectly through its agents and representatives, made untrue statements of material facts and omitted to state material facts necessary to make the statements that Defendant made to Plaintiffs, in light of the circumstances under which they were made, not misleading, in connection with the offer and sale of a "security" within the meaning of applicable California statutory law.  Defendant thereby violated California Corporations Code § 25401, as more particularly set forth in paragraphs 8-48 of this Complaint.

59.     The misstatements, misrepresentations and omissions referred to herein are of material facts within the meaning of California Corporations Code § 25401 because they concern matters a reasonable investor would consider in deciding to invest.

60.     At the time Defendant made the representations set forth in this Complaint, it either knew the representations were false or misleading, or failed to exercise reasonable care to determine the truth or falsity of the statements.

61.     Plaintiffs, and each of them, did not know, or in the exercise of due diligence could not have known, of Defendant's misstatements, misrepresentations and omissions, as set forth in this Complaint, at the time they were made.

62.    As a direct and proximate result of the misstatements, misrepresentations and omissions of Defendant, Plaintiff James R. Alberts suffered loss and damage equal to his investment amount of $50,000, which is now worthless because of Defendant's failure to issue the Note, plus interest and costs to be determined.

63.    As a direct and proximate result of the misstatements, misrepresentations and omissions of Defendant, Plaintiff Brian Cameron suffered loss and damage equal to his investment amount of $100,000, which is now worthless because of Defendant's failure to issue the Note, plus interest and costs to be determined.

64.    By reason of the foregoing, Defendant violated California Corporations Code § 25401 and is liable under California Corporations Code § 25501 to Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION

**(Against DOES 1-10 For Violation of California Corporations Code § 25504)**

65.    Plaintiffs re-allege and incorporate by this reference paragraphs 1-64 as though fully set forth herein.

66.    DOES 1-10, and each of them, are liable for the above-stated violations of California Corporations Code § 25401 because they were controlling persons of Defendant under California Corporations Code § 25504.

67.    DOES 1-10 were, at all relevant times, officers, directors, agents, affiliated persons, and/or employees of Defendant.

68.    Plaintiffs, and each of them, suffered damages as a result of the violations of California Corporations Code § 25401 by Defendant, of which DOES 1-10 were control persons.

69.    Plaintiffs, and each of them, did not know, or in the exercise of due diligence could not have known, of the misstatements, misrepresentations and omissions made by Defendant, as set forth in this Complaint, at the time they were made.

///

///

1    70.    By reason of the foregoing, Defendant is primarily liable under California

2  Corporations Code § 25501, and DOES 1-10, and each of them, are jointly and severally liable

3  as control persons under California Corporations Code § 25504 to Plaintiffs.

4          WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

5                              **FIFTH CAUSE OF ACTION**

6        **(Against Defendant Razor Audio, Inc. For Fraudulent Misrepresentation)**

7    71.    Plaintiffs re-allege and incorporate by this reference paragraphs 1-70 as though

8  fully set forth herein.

9    72.    Defendant, by and through its agents, made the following representations via

10  telephone and electronic mail to Plaintiffs:

11          a.    In or about June 2008, Tom Alberts represented to Plaintiffs, via

12  telephone and e-mail, that if they invested money in Defendant, Defendant would issue to

13  Plaintiffs, and each of them, a Note whereby the principal amount could be converted into

14  shares of stock in Defendant upon the terms and conditions therein.

15          b.    In or about June 2008, Tom Alberts represented to Plaintiffs via

16  telephone and e-mail that the Notes issued would be substantially similar to the form Note that

17  Defendant provided each Plaintiff.

18          c.    In or about June 2008, Tom Alberts represented to Plaintiffs via

19  telephone and e-mail that Defendant had the corporate authority to issue the Notes to Plaintiffs.

20          d.    In November 2008, Henry Montgomery represented to Plaintiff Brian

21  Cameron via telephone that if he completed the form Note and returned it to him, Defendant

22  would execute said Note.

23          e.    In November and December 2008 and again in June 2009, after Plaintiffs

24  deposited their money in Defendant's bank account, Henry Montgomery and Jacob Jorgensen

25  represented to Plaintiffs via telephone that they each had a viable investment in Defendant.

26    73.    The above-mentioned representations were untrue, the true facts being as

27  follows:

28  ///

1          a.      With the intention of investing in Defendant, Plaintiff James R. Alberts

2  deposited $50,000 in Defendant's bank account, and Plaintiff Brian Cameron deposited

3  $100,000 in Defendant's bank account.

4          b.      Defendant, in desperate need of capital, accepted the collective sum of

5  $150,000 that Plaintiffs deposited in its bank account and spent all of it.

6          c.      Defendant never issued the Notes to Plaintiffs.

7          d.      Defendant never intended to issue the Notes and knew it lacked the

8  requisite corporate authority to do so.

9          e.      Defendant refuses to return the collective sum of $150,000 to Plaintiffs

10  and has not communicated with Plaintiffs in any manner since June 2009.

11          f.      Defendant's failure to issue the Notes to Plaintiffs rendered their

12  investments in the company worthless.

13     74.     Defendant intentionally, or with reckless disregard of the truth, made the

14  aforementioned material misrepresentations and/or omissions knowing that they were untrue in

15  an effort to induce Plaintiffs to rely on its misrepresentations and/or omissions and to wire

16  transfer a significant sum of money into the Defendant's bank account and to Plaintiffs'

17  detriment.

18     75.     In making the aforementioned material misrepresentations and/or omissions,

19  Defendant intentionally misrepresented and concealed from Plaintiffs material facts known to

20  Defendant with the intention on the part of Defendant of depriving Plaintiffs of their money and

21  investment opportunity, thereby justifying an award of punitive damages under California Civil

22  Code § 3294 against Defendant in an amount sufficient to punish or make an example of

23  Defendant's conduct.

24     76.     Plaintiffs justifiably relied on the material misrepresentations and/or omissions of

25  Defendant and were induced to invest a significant sum of money in Defendant.  Specifically,

26  Plaintiff James R. Alberts wire transferred $50,000 of his money into Defendant's bank account,

27  and Plaintiff Brian Cameron wire transferred $100,000 of his money into Defendant's bank

28  account.

77.     Except for the false representations and/or omissions of Defendant, Plaintiffs would not have deposited said money into Defendant's bank account.  Instead, Plaintiffs would have held on to their money and invested it in a legitimate business opportunity.

78.     As a proximate result of the above-described negligence of Defendant, Plaintiffs have been damaged, and continue to be damaged, in a sum according to proof at trial, including but not limited to, the amounts they each deposited in Defendant's bank account, as well as interest and costs thereon.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### (Against Defendant Razor Audio, Inc. For Negligent Misrepresentation)

79.     Plaintiffs re-allege and incorporate by this reference paragraphs 1-78 as though fully set forth herein.

80.     Defendant, by and through its agents, made the following representations via telephone and electronic mail to Plaintiffs:

a.     In or about June 2008, Tom Alberts represented to Plaintiffs via telephone and e-mail that if they invested money in Defendant, Defendant would issue to Plaintiffs, and each of them, a Note whereby the principal amount could be converted into shares of stock in Defendant upon the terms and conditions therein.

b.     In or about June 2008, Tom Alberts represented to Plaintiffs via telephone and e-mail that the Notes issued would be substantially similar to the form Note that Defendant provided each Plaintiff.

c.     In or about June 2008, Tom Alberts represented to Plaintiffs via telephone and e-mail that Defendant had the corporate authority to issue the Notes to Plaintiffs.

d.     In November 2008, Henry Montgomery represented to Plaintiff Brian Cameron via telephone that if he completed the form Note and returned it to him, Defendant would execute said Note.

///

///

**COMPLAINT**

1    e.  In November and December 2008 and again in June 2009, after Plaintiffs

2 deposited their money in Defendant's bank account, Henry Montgomery and Jacob Jorgensen

3 represented to Plaintiffs via telephone that they each had a viable investment in Defendant.

4   81.  The above-mentioned representations were untrue, the true facts being as

5 follows:

6    a.  With the intention of investing in Defendant, Plaintiff James R. Alberts

7 deposited $50,000 in Defendant's bank account, and Plaintiff Brian Cameron deposited

8 $100,000 in Defendant's bank account.

9    b.  Defendant, in desperate need of capital, accepted the collective sum of

10 $150,000 that Plaintiffs deposited in its bank account and spent all of it.

11    c.  Defendant never issued the Notes to Plaintiffs.

12    d.  Defendant never intended to issue the Notes and knew it lacked the

13 requisite corporate authority to do so.

14    e.  Defendant refuses to return the collective sum of $150,000 to Plaintiffs

15 and has not communicated with Plaintiffs in any manner since June 2009.

16    f.  Defendant's failure to issue the Notes to Plaintiffs rendered their

17 investments in the company worthless.

18   82.  Defendant made the aforementioned material misrepresentations and/or

19 omissions without a reasonable basis for believing them to be true.

20   83.  Defendant made the aforementioned misrepresentations and/or omissions in an

21 effort to induce Plaintiffs to wire transfer a substantial amount of their money into Defendant's

22 bank account.

23   84.  Plaintiffs justifiably relied on the material misrepresentations and/or omissions of

24 Defendant and were induced to invest a significant sum of money in Defendant.  Specifically,

25 Plaintiff James R. Alberts wire transferred $50,000 of his money into Defendant's bank account,

26 and Plaintiff Brian Cameron wire transferred $100,000 of his money into Defendant's bank

27 account.

28 ///

85.    Except for the misrepresentations and/or omissions of Defendant, Plaintiffs would not have deposited said money into Defendant's bank account. Instead, Plaintiffs would have held on to their money and invested it in a legitimate business opportunity.

86.    As a proximate result of the above-described negligence of Defendant, Plaintiffs have been damaged, and continue to be damaged, in a sum according to proof at trial, including but not limited to, the amounts they each deposited in Defendant's bank account, as well as interest and costs thereon.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (Against Defendant Razor Audio, Inc. For Breach of Contract)

87.    Plaintiffs re-allege and incorporate by this reference paragraphs 1-86 as though fully set forth herein.

88.    In or about June 2008, Plaintiffs and Defendant entered into an agreement, both orally and in writing, whereby Plaintiffs, and each of them, agreed to invest money in Defendant; and, in exchange for this consideration, Defendant agreed to issue a Note to each Plaintiff that could be converted into shares of stock in Defendant upon the terms and conditions therein.

89.    In June 2008, Plaintiff James R. Alberts wire transferred $50,000 of his money into Defendant's bank account. In July 2008, Plaintiff Brian Cameron wire transferred $100,000 of his money into Defendant's bank account.

90.    Plaintiffs, and each of them, fully performed their obligations under their agreement with Defendant, or their performance was excused due to Defendant's failure to perform.

91.    Defendant breached the agreement by intentionally, through gross negligence and/or negligently refusing, and continuing to refuse, to issue the Notes to Plaintiffs or to return Plaintiff's investment. Instead, Defendant simply took Plaintiffs' money and spent all of it.

92.    As a result of Defendant's aforementioned breach of its agreement with Plaintiffs, Plaintiffs, and each of them, have suffered loss, damage and injury in an amount to be

**COMPLAINT**

1  proven at trial, including, but not limited to, interest and costs.

2  **EIGHTH CAUSE OF ACTION**

3  **(Against Defendant Razor Audio, Inc. For Unjust Enrichment)**

4      93.    Plaintiffs re-allege and incorporate by this reference paragraphs 1-92 as though

5  fully set forth herein.

6      94.    Defendant, by and through its agents and representatives, represented to

7  Plaintiffs that if they each invested money in Defendant, Defendant would issue each of them a

8  Note that could be converted into shares of stock in the company upon the terms and conditions

9  therein.

10      95.    Based on this representation, Plaintiff James R. Alberts wire transferred $50,000

11  of his money into Defendant's bank account, and Plaintiff Brian Cameron wire transferred

12  $100,000 of his money into Defendant's bank account.

13      96.    After Plaintiffs wire transferred this money into Defendant's bank account, the

14  company refused to issue the Notes.

15      97.    Instead, Defendant unjustly retained the money it received from Plaintiffs for its

16  own gain and benefit.

17      98.    As a result, Defendant has been unjustly enriched at the expense of Plaintiffs, and

18  each of them.

19      99.    Accordingly, Plaintiffs seeks restitution of the amounts owed to them equal to the

20  amounts they each invested in Defendant, plus interest as allowed by law.

21  **PRAYER FOR RELIEF**

22      WHEREFORE, Plaintiffs pray as follows:

23      1.    For general damages suffered by Plaintiffs in the collective amount of $150,000,

24  plus interest as allowed by law;

25      2.    For recovery of all contractual and other damages arising out of the breaches of

26  contract;

27      3.    For all compensatory and special damages suffered by Plaintiffs, and each of

28  them;

1  4.   For rescission of their purchase of equitable security interests in Defendant and

2  the return of the collective sum of $150,000 they invested in Defendant, plus interest as allowed

3  by law;

4  5.   For restitution of the amounts owed to them equal to the collective sum of

5  $150,000 they invested in Defendant, plus interest as allowed by law;

6  6.   For punitive damages in the amount of $1,000,000 to Plaintiff Brian Cameron

7  and $500,000 to Plaintiff James R. Alberts (as to the Fifth Cause of Action);

8  7.   For pre-judgment interest as allowed by law; and

9  8.   For costs of suit and such other relief as the Court deems just and proper.

11  DATED:  May 18, 2010

BULLIVANT HOUSER BAILEY, P.C.

By
John E. Spomer III
Shauna N. Correia
Attorneys for Plaintiffs JAMES R. ALBERTS and
BRIAN CAMERON

16  12502403.1

**COMPLAINT**