IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES R. ALBERTS and BRIAN CAMERON,

    Plaintiffs,

vs.

RAZOR AUDIO, INC., a Delaware corporation; et al.,

    Defendants.

No. CIV S-10-1215 KJM-DAD

ORDER

THOMAS ALBERTS, an individual,

    Cross-claimant,

vs.

JACK CRAWFORD, JR., an individual; et al.,

    Cross-defendants.

    This matter comes before the court upon cross-defendants Henry Montgomery's ("Montgomery") and DLA Piper LLP, Gilles Attia, and David Richardson's ("Attorneys") motions to dismiss the cross-complaint. (ECF 33 and 39.) The court has reviewed the parties'

/////

submissions and decided these motions without hearings. For the following reasons, the court hereby GRANTS Montgomery's and Attorneys' motions.

I. PROCEDURAL HISTORY

Plaintiffs filed their complaint on May 18, 2010 (ECF 2) and their first amended complaint on July 22, 2010. (ECF 11.) Cross-complainant Thomas Alberts ("Alberts") filed his cross-complaint on February 3, 2011. (ECF 22.) Alberts alleges nine causes of action: 1) fraud, against all cross-defendants except Attorneys;[1] 2) intentional breach of fiduciary duty, against all cross-defendants except Attorneys; 3) negligent breach of fiduciary duty, against all cross-defendants except Attorneys; 4) violation of Section 10(b) of the 1934 Securities Act and Rule 10b-5, against all cross-defendants except Attorneys; 5) violation of Section 20(a) of the 1934 Securities Act, against all cross-defendants except Attorneys; 6) violation of California Corporation Code §§ 25401 and 25501, against all cross-defendants except Attorneys; 7) violation of California Corporations Code § 25504, against all cross-defendants except Attorneys; 8) breach of contract, against all cross-defendants except Attorneys; and 9) legal malpractice against Attorneys.

Montgomery filed the present motion to dismiss in lieu of an answer on March 21, 2011. (ECF 33.) Alberts filed an opposition on April 12, 2011. (ECF 36.) Montgomery filed a reply on April 20, 2011. (ECF 37.)

---

[1] Alberts's cross-complaint lists twenty (20) Roe defendants. The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Alberts is warned, however, that such defendants will be dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Id.* (quoting *Gillespie*, 629 F.2d at 642). Alberts is further warned that Federal Rule of Civil Procedure 4(m), which states that the court must dismiss defendants who have not been served within 120 days after the filing of the complaint unless plaintiff shows good cause, is applicable to doe defendants. *See Glass v. Fields*, No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27, 2011).

Attorneys filed the present motion to dismiss in lieu of an answer on May 5, 2011. (ECF 39.) Alberts filed an opposition on May 24, 2011. (ECF 43.) Attorneys filed a reply on June 1, 2011. (ECF 47.)

II. ANALYSIS

    A.    Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986)

3

(quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

B.  Application

1.  Montgomery's Motion to Dismiss[2] (ECF 33)

i.  Fraud

Common law fraud "normally requires the plaintiff to prove (a) [a] misrepresentation . . .; (b) knowledge of falsity . . .; (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 820 (2011) (internal quotations omitted). "A plaintiff may recover for fraud when he shows that by reason of a defendant's misrepresentations he has sustained some pecuniary damage or injury by reason of having been put in a position worse than he would have

---

[2] Although the court will proceed by addressing each of Alberts's individual claims against Montgomery, the court generally notes the dearth of facts alleged against Montgomery. Alberts's factual allegations against Montgomery can be summed up as follows: Montgomery was CFO of VVC, Velocity Venture Capital, LLC, Velocity VC Management II, LLC, and Razor; Montgomery was an "agent[], employee[], director[], manager[] partner[] or officer[]" of Velocity VC Partners II, LLC; and Montgomery with other cross-defendants "used their control over RAZOR to siphon off investment monies that should have been used for the research and development of flat screen audio speakers, and have diverted those funds to VELOCITY and CRAWFORD in the form of excessive and unwarranted consulting and/or management fees" and "disregarded the corporate formalities associated with the corporate governance of RAZOR by failing to hold regular meetings of the Board of Directors; by directing the officers of RAZOR to take actions that needed approval of the Board of Directors, and then failing and refusing to execute the minutes of the Board of Directors to confirm, direct and/or ratify the actions thus taken." (Cross-complaint ¶¶ 16, 18, 19, 23, 24.)

4

occupied had there been no fraud." *R. D. Reeder Lathing Co. v. Cypress Ins. Co.*, 3 Cal. App. 3d 995, 999 (1970). "Detrimental reliance is an essential element of fraud." *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1197 (1993).

Montgomery contends that Alberts's fraud claim fails to satisfy the requirements of Federal Rule of Civil Procedure 9(b) because it is not pled with particularity. (Montgomery's Mot. at 2.) Alberts argues that fraud is properly pled because there was a conspiracy between Montgomery and other cross-defendants. (Alberts's Opp'n to Montgomery at 7.)

Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. While mere conclusory allegations of fraud will not suffice, statements of time, place and nature of the alleged fraudulent activities will." *Bosse v. Cromwell Collier & MacMillan*, 565 F.2d 602, 611 (9th Cir. 1977) (internal citations omitted). "A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation omitted).

Alberts has failed to set forth sufficient factual allegations to survive a motion to dismiss his fraud claim against Montgomery. Alberts's reliance on a conspiracy theory in his opposition to the motion does not save the complaint, as he does not plead conspiracy with any particularity, nor are there any factual allegations in the complaint that serve to "'nudge'" his claim "'across the line from conceivable to plausible.'" *Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 570). In the cross-complaint, the only fact Alberts alleges with any particularity is that Montgomery was the CFO of VVC, Velocity VC Management II, and Razor. (Cross-complaint ¶¶ 18, 23, 24.) Alberts also attempts to allege that Montgomery, along with other cross-defendants, "used [his] control over RAZOR to siphon off investment monies . . ."

1  and "disregarded the corporate formalities associated with the corporate governance of RAZOR .
2  . . ." (*Id.* ¶ 24.) However, these are the precise sort of "bald allegations" that are insufficient to
3  survive a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1951. Moreover, Alberts has failed to
4  satisfy Federal Rule of Civil Procedure 9(b). In sum, Alberts has failed to provide "sufficient
5  factual matter" showing that Montgomery made any misrepresentations to him, much less that
6  Alberts relied on such misrepresentations. The first cause of action is dismissed without
7  prejudice.

           ii.      Intentional breach of fiduciary duty and negligent breach of fiduciary duty

10  "'To establish a cause of action for breach of fiduciary duty, a plaintiff must
11  demonstrate the existence of a fiduciary relationship, breach of that duty and damages.'"
12  *Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489, 1509 (2008) (quoting *Charnay v.
13  Cobert*, 145 Cal. App. 4th 170, 182 (2006)). "[T]here must be an adequate showing of each of
14  these elements." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal.
15  App. 4th 445, 483 (1998). "Whether a fiduciary duty exists is generally a question of law."
16  *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1599 (2008). "A fiduciary or
17  confidential relationship can arise when confidence is reposed by persons in the integrity of
18  others, and if the latter voluntarily accepts or assumes to accept the confidence, he or she may
19  not act so as to take advantage of the other's interest without the person's knowledge or
20  consent." *Oates v. City of Lincoln*, 93 Cal. App. 4th 25, 35 (2001) (internal quotation omitted).
21  Moreover, "a fiduciary relationship requires that one party control some interest of the other
22  party." *Id.*

23             Montgomery maintains that Alberts's claims for intentional and negligent breach
24  of fiduciary duty fail because Alberts does not establish that Montgomery owed him a fiduciary
25  duty. (Montgomery's Mot. at 2.) Alberts counters that Montgomery did owe him a fiduciary
26  duty because he invested money with Razor while Montgomery was CFO of Razor. (Alberts's

6

1 Opp'n to Montgomery at 8.)  In addition, Alberts contends that Montgomery is liable for the
2 tortious actions committed on behalf of Razor as a corporate officer.  (*Id.* at 9.)  Moreover, he
3 alludes to a theory of constructive fraud.  (*Id.*)

4        The parties have not directed this court to any relevant authority on the question
5 of whether an officer of a corporation owes a stockholder fiduciary duties by virtue of the
6 officer's position.[3]  However, there are several cases from California and this Circuit that address
7 this question.  *See Singhania v. Uttarwar*, 136 Cal. App. 4th 416, 426 (2006) ("California clearly
8 recognizes that officers and directors owe a fiduciary duty to stockholders . . . ."); *Small v. Fritz*
9 *Companies, Inc.*, 30 Cal. 4th 167, 179 (2003) ("Officers and directors owe a fiduciary duty to
10 stockholders."); *Mueller v. Macbean*, 62 Cal. App. 3d 258, 274 (1976) ("Directors owe a duty of
11 the highest good faith to the corporation and its stockholders, and this same duty is demanded of
12 officers of the corporation."); *Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 110 (1969) ("The
13 rule that has developed in California is a comprehensive rule of 'inherent fairness from the
14 viewpoint of the corporation and those interested therein.' [internal citations omitted] The rule
15 applies alike to officers, directors, and controlling shareholders in the exercise of powers that are
16 theirs by virtue of their position . . . ."); *see also Burt v. Irvine Co.*, 237 Cal. App. 2d 828, 850
17 (1965); *see also Thomas Weisel Partners LLC v. BNP Paribas*, No. C 07-6198 MHP, 2010 U.S.
18 Dist. LEXIS 32332, at *14-15 (N.D. Cal. Apr. 1, 2010) ("Corporate officers and directors stand
19 in a fiduciary relation to the corporation and its stockholders . . . ."); *see also* CAL. CORP. CODE
20 § 309[4] (only discussing applicability of director's duty of good faith to business judgment rule;
21 however, legislative comments show Committee on Corporate Laws concluded officer may have
22 "'a duty of care similar to that of a director.'" (quoting Committee on Corporate Laws, Changes

---

[3] *O'Connell v. Union Drilling & Petroleum Co.*, 121 Cal. App. 302, 308 (1932), discussed by both parties, is inapposite as it concerns tortious liability, not breach of fiduciary duties.

[4] *See Fed. Deposit Ins. Corp. v. Perry*, No. CV 11-5561 ODW (MRWx), 2011 U.S. Dist. LEXIS 143222, at *12-13 (C.D. Cal. Dec. 13, 2011).

7

1 in the Model Business Corporation Act, 29 Bus. Lawyer 953 (1974))).  Thus, it is clear that an
2 officer of a California corporation does owe a fiduciary duty to the corporation's stockholders.
3         However, Alberts fails to allege that Montgomery breached any fiduciary duties
4 potentially owed him.  Alberts alleges generally that "CROSS-DEFENDANTS . . . breached
5 their fiduciary duties to [him] by deceiving [him] . . . and by failing to ever disclose their true
6 intentions and design to use [his] skills and talents in the short term to collect monies for
7 RAZOR and then strip him of any long-term benefits . . . ."  (Cross-complaint ¶ 105.)  However,
8 nowhere in the cross-complaint does Alberts sufficiently allege that Montgomery participated in
9 any deceit or design.  "Whether the defendant breached [its fiduciary duties] towards the plaintiff
10 is a question of fact."  *Amtower*, 158 Cal. App. 4th at 1599.  Pleading only that Montgomery was
11 CFO of Razor is insufficient to state a claim for intentional or negligent breach of fiduciary duty.
12         Moreover, Alberts's contention in his opposition that Montgomery's actions "may
13 constitute constructive fraud" (Alberts's Opp'n to Montgomery at 9) does not save his claims for
14 breach of fiduciary duty.  "[A]s a general principle constructive fraud comprises any act,
15 omission or concealment involving a breach of legal or equitable duty, trust or confidence with
16 results in damage to another even though the conduct is not otherwise fraudulent."  *Salahutdin v.*
17 *Valley of California, Inc.*, 24 Cal. App. 4th 555, 562 (1994) (internal quotation and emphasis
18 omitted).  Alberts simply has not sufficiently alleged that Montgomery committed any breach,
19 much less that such breach led Alberts to suffer damages.
20         The second and third causes of action are dismissed without prejudice.
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////

      iii. Violation of Section 10(b) of the Securities Act of 1934 and Rule 10b-5

Section 10(b) of the Securities and Exchange Act of 1934 states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange . . . (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 CFR § 240.10b-5. Section 10(b) and Rule 10b-5 "give rise to liability for two types of conduct: (1) the making of a material misstatement or omission or (2) the commission of a manipulative act." *Kelly v. Rambus, Inc.*, No. C 07-01238 JF, 2008 U.S. Dist. LEXIS 120042, at *9 (N.D. Cal. Apr. 17, 2008) (citing *Central Bank of Denver v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994)). In order to state a claim under § 10(b), Alberts must plead facts showing that Montgomery "(A) made an untrue statement of a material fact; or (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading." 15 U.S.C. § 78u-4(b)(1). Specifically, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or

9

omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id*. Furthermore, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" (15 U.S.C. § 78u-4(b)(2)(A)) as scienter "'constitut[es]' an important and necessary element of a § 10(b) 'violation.' A plaintiff cannot recover without proving that a defendant made a material misstatement with an intent to deceive–not merely innocently or negligently. . . . [U]nless a § 10(b) plaintiff can set forth facts in the complaint showing that it is 'at least as likely as' not that the defendant acted with the relevant knowledge or intent, the claim will fail." *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1796 (2010) (internal citations omitted).  Likewise, a Rule 10b-5 claim must allege a material misrepresentation or omission of fact, "'scienter, [] a connection with the purchase or sale of a security, [] transaction and loss causation, and [] economic loss.'" *Onie v. Conners* (*In re Cutera Sec. Litig.*), 610 F. 3d 1103, 1108 n.1 (9th Cir. 2010).

Montgomery contends that the cross-complaint "does not contain a single allegation as to what representations, if any, were made by Montgomery, when they were made, or how they were fraudulent." (Montgomery's Mot. at 4.)

Alberts alleges that "CROSS-DEFENDANTS engaged in schemes, conspiracies and a course of conduct . . . to operate a fraud and deceit upon" him; "disseminated and/or approved the dissemination of materially false and misleading statements and information;" and "failed to disclose material facts . . . ." (Cross-complaint ¶ 118.)  Alberts nowhere factually alleges any such conduct on the part of Montgomery, nor does he attribute any such statements to Montgomery; Alberts only provides "'a formulaic recitation of the elements of [this] cause of action,'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570), which is wholly insufficient to survive a motion to dismiss.  Alberts's fourth cause of action is dismissed without prejudice as to Montgomery.

/////

                iv.      Violation of Section 20(a) of the 1934 Securities Act

Section 20(a) of the Securities Act of 1934 states: "Every person who, directly or indirectly, controls any person liable under any provision of this title [] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). "[T]he test of liability is that 'the controlling person . . . must have acted in bad faith and directly or indirectly induced the conduct constituting a violation or cause of action.'" *Strong v. France*, 474 F.2d 747, 752 (9th Cir. 1973) (quoting *Hecht v. Harris, Upham and Co.*, 430 F.2d 1202, 1210 (9th Cir. 1970) (internal quotation omitted)). "Merely holding an executive position within a company is insufficient for control person liability." *In re Verifone Holdings Sec. Litig.*, No. C 07-6140 MHP, 2011 U.S. Dist. LEXIS 24964, at *52 (N.D. Cal. Mar. 8, 2011).

Montgomery maintains that "simply alleging a defendant's position within a company, [as] attempted here, is insufficient" and that the complaint does not allege that Montgomery was a controlling person. (Montgomery's Mot. at 5.) Alberts contends that Montgomery was a controlling person by virtue of his position as CFO and his relationship with other cross-defendants.

Alberts has failed to allege sufficient facts for violation of § 20(a); Alberts alleges "merely [that Montgomery held] an executive position within" Razor. *In re Verifone Holdings*, 2011 U.S. Dist. LEXIS 24964, at *52. Alberts's fifth cause of action is dismissed without prejudice as to Montgomery.

/////
/////
/////
/////

11

                v.        Violation of California Corporation Code §§ 25401 and 25501

California Corporation Code § 25401 states:

> It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

California Corporation Code § 25501 states:

> Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him . . . unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know . . . of the untruth or omission.

"Section 25501 on its face requires privity between the plaintiff and the defendant." *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 253 (2007). "[L]iability under section 25501 attaches only to the actual seller of the securities, who, if he violates section 25401, 'shall be liable to the person who purchases a security from him.'" *Id*. at 254 (quoting § 25501).

        Montgomery contends that this claim "should be dismissed for failing to allege any misrepresentation by Montgomery." (Montgomery's Mot. at 6.) Alberts relies on his use of the word "cross-defendants" in making his blanket assertions throughout his cross-complaint. (Alberts's Opp'n to Montgomery at 11.)

        Alberts has wholly failed to allege that Montgomery sold him a security. As such, Alberts's sixth cause of action is dismissed without prejudice as to Montgomery.

/////
/////
/////
/////

      vi.  Violation of California Corporation Code § 25504

California Corporation Code § 25504 states:

> Every person who directly or indirectly controls a person liable under Section 25501 . . . every principal executive officer or director of a corporation so liable . . . are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

"To be jointly and severally liable under section 25504, [the defendant] must have materially aided, not simply in the transaction, but in the violation . . . . Merely 'play[ing] an active role []' does not suffice. But neither is it necessary . . . to show [the defendant's] actual participation in drafting the false or misleading statements . . . . To plead that [the defendant] materially aided [in the making of] false or misleading representations, [the plaintiff was] required to plead facts showing [the defendant's] knowledge of the false or misleading nature of the representations . . . ." *Apollo*, 158 Cal. App. 4th at 256.

  Montgomery contends that Alberts "has failed to allege facts with any sort of particularity that Montgomery was a 'controlling person' [and] that Montgomery had any of knowledge [sic] of any violations of California securities laws." (Montgomery's Mot. at 8.) Alberts contends that Montgomery is a controlling person. (Alberts's Opp'n to Montgomery at 11-12.)

  Alberts has failed to plead sufficient facts alleging that Montgomery materially aided in the making of any representations, false and misleading or otherwise, or that Montgomery knew of such representations. Alberts's seventh cause of action is dismissed without prejudice as to Montgomery.

      vii.  Breach of contract

  "'A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.'" *Durell v. Sharp Healthcare*,

13

183 Cal. App. 4 th 1350, 1367 (2010) (quoting *Careau & Co. v. Sec. Pacific Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990) (emphasis omitted)).

Montgomery maintains that the cross-complaint does not allege there was a contract between Montgomery and Alberts. (Montgomery's Mot. at 8.) Alberts contends that the claim is "premised on the alter ego theory of liability." (Alberts's Opp'n to Montgomery at 12.)

Alberts simply fails to allege anywhere in the cross-complaint that a contract existed between himself and Montgomery. Moreover, Alberts does not allege in either the cross-complaint or in his opposition that Montgomery was the alter ego of any corporation named in the cross-complaint. Rather, Alberts contends that "the court will deem the corporation's acts as the acts of those persons who own and control the entity" and that as a result, presumably, the court should find that Montgomery breached a contract existing between Alberts and the corporation. (Alberts's Opp'n to Montgomery at 13.) Alberts's cross-complaint is completely devoid of such a theory; indeed, the court has found already that Alberts has failed to allege that Montgomery was a controlling person in other contexts. Alberts has failed to state a claim for breach of contract against Montgomery; as such, his eighth cause of action is dismissed without prejudice as to Montgomery.

    2.  Attorneys' Motion to Dismiss (ECF 39)

Attorneys contend Alberts's claim for legal malpractice must be dismissed because Alberts does not allege sufficient facts that an attorney-client relationship existed. (Attorneys' Mot. at 3.) Alberts contends that he has sufficiently pled he was Attorneys' client and that, in any event, he has sufficiently pled that Attorneys' owed him a duty as a non-client. (Alberts's Opp'n to Attorneys at 13.)

"To state a cause of action for legal malpractice, a plaintiff must plead '(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal

connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence.'" *Martorana v. Marlin & Saltzman*, 175 Cal. App. 4th 685, 693 (2009) (quoting *Coscia v. McKenna & Cuneo*, 25 Cal. 4th 1194, 1199 (2001)); *see also Goldberg v. Frye*, 217 Cal. App. 3d 1258, 1267 (1990) ("A key element of any action for professional malpractice is the establishment of a duty by the professional to the claimant."). "Whether an attorney sued for malpractice owed a duty of care to the plaintiff 'is a question of law and depends on a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances.'" *Martorana*, 175 Cal. App. 4th at 693 (quoting *Goodman v. Kennedy*, 18 Cal. 3d 335, 342 (1976)).

Alberts has failed to plead that Attorneys owed him a duty. Alberts alleges that "[a]t the time ATTORNEYS became aware of the problems with RAZOR's corporate governance . . . they knew or should have known that [Alberts] did not have authority to act as the CEO for RAZOR and could not be and was not the CEO because RAZOR's Board of Directors had never approved his employment as such." Alberts also alleges he "believed that ATTORNEYS were representing his individual and personal interests in regard to the advice they were giving him." (Cross-complaint ¶¶ 147, 148.) These allegations do not save his claim. "California law is settled that a client's subjective belief that an attorney-client relationship exists, standing alone, cannot create such a relationship, or a duty of care owed by the attorney to that plaintiff." *Zenith Ins. Co. v. O'Connor*, 148 Cal. App. 4th 998, 1010 (2007). "[I]t is the intent and conduct of the parties that control the question as to whether an attorney-client relationship has been created." *Id.* Moreover, "[a]n attorney-client relationship is not dependent on any actual event, but rather depends on the communications between the attorney and client." *Britz Fertilizers, Inc. v. Bayer Corp.*, No. 1:06cv287 OWW DLB, 2009 U.S. Dist. LEXIS 44589, at *13 (E.D. Cal. May 4, 2009); *see also Davis v. State Bar of Cal.*, 33 Cal. 3d 231, 237 (1983) ("No formal arrangements are necessary to establish an attorney-client relationship . . . .").

/////

15

There is no indication in Alberts's counter-complaint that Attorneys ever expressed that they were representing Alberts as an individual or that Alberts sought such representation.

Specifically, Alberts has not alleged an attorney-client relationship in that his complaint alleges attorneys were retained as counsel for Razor in 2006[5] to oversee and document the business activities of the corporation and "[t]he scope of the legal representation was: General corporate securities matters, including, but not limited to, research and analysis of legal and factual issues, analysis of applicable law, negotiations with other parties, drafting and preparation of documents, written and oral communications with other parties, and the preparation of technology transfer agreements." (Cross-complaint ¶¶ 25, 33.) Alberts describes Attorneys' legal representation as consisting of the following: formally incorporating Razor, transferring intellectual property rights of flat screen audio speakers to Razor, preparing paperwork "to address various issues of corporate governance, including a unanimous written consent to add [Alberts] as a director; to ratify various stock purchase agreements; and to ratify actions taken by [Alberts] as CEO to that date," preparing several written consents "to amend RAZOR bylaws, to appoint [Alberts] as a director, to issue stock in RAZOR, and other enabling resolutions," preparing "subscription documents for the Series A financing," conducting due diligence with regard to the Series A financing, advising Alberts of their efforts to obtain Series A financing, advising Alberts that Razor's corporate governance issues would be resolved, "suggest[ing]" that Alberts call a meeting of Razor's Board of Directors to discuss Series A financing, and providing Alberts with a Subscription Booklet for investors. (*Id.* ¶¶ 36, 38, 54, 57, 59, 61, 63-65, 69-72, 83.) Alberts does not allege that Attorneys provided him any advice that was not related to Razor and his work with Razor. The law is clear that "'[t]he attorney for

---

[5] The date alleged varies in the complaint, from August 2006 to June 22, 2006. (*Compare* Cross-complaint ¶ 25 *with* ¶ 33.) The engagement letter is dated June 22, 2006. (Ragland Decl., Ex. A, ECF 40.) The court properly considers this engagement letter as its "authenticity ... is not contested and [Alberts's counter-complaint] necessarily relies on [it]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations omitted).

a corporation represents it, its stockholders and its officers in their *representative* capacity. He in nowise represents the officers *personally*.'" *Borissoff v. Taylor & Faust*, 33 Cal. 4th 523, 534 (2004) (quoting *Meehan v. Hopps*, 144 Cal. App. 2d 284, 290 (1956)) (emphasis in original); *see also Skarbrevik v. Cohen*, 231 Cal. App. 3d 692, 704 (1991) ("[C]orporate counsel's direct duty is to the client corporation, not to the shareholders individually, even though the legal advice rendered to the corporation may affect the shareholders.").

However, "[u]nder California law, attorneys may be liable to a third party where the third party 'was an intended beneficiary of the attorney's services, or where it was reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others.'" *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1506 (9th Cir. 1993) (quoting *Fox v. Pollack*, 181 Cal. App. 3d 954, 960 (1986)). "[A] duty may arise absent privity of contract, and not based upon an attorney-client relationship[, t]he determination of [which] rests upon the assessment of six considerations: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the policy of preventing future harm; and (6) whether recognition of liability under the circumstances would impose an undue burden on the profession."[6] *Goldberg*, 217 Cal. App. 3d at 1268 (internal quotation and emphasis omitted). "The predominant inquiry . . . is whether the principal purpose of the attorney's retention is to provide legal services for the benefit of the plaintiff." *Id.*; *see also Zenith*, 148 Cal. App. 4th at 1008 (2007) ("An essential predicate for establishing an attorney's duty of care under an 'intended beneficiary' theory is that *both* the attorney . . . and the client . . . must have intended [the third party] to be a beneficiary of legal services [the attorney] was to render." (citing

---

[6] An additional factor found in other California cases is "the moral blame attached to the defendant's conduct." *Goodman v. Kennedy*, 18 Cal. 3d 335, 343 (1976); *see also Navellier v. Sletten*, 262 F.3d 923, 934 (9th Cir. 2001).

*B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 832 (1997))).  An attorney's knowledge "that third parties will be affected by his representation of his client . . . is not sufficient to create a duty of care." *Id.*  Here, Alberts has alleged that Attorneys provided legal services for his benefit in preparing documents to add him to the Board of Directors.  (Cross-complaint ¶¶ 53, 54, 57, 71, 73.)  Moreover, Alberts has alleged that Attorneys provided misleading information to him in connection with his investment-raising activities.  (*Id.* ¶¶ 61, 63, 65, 70-72.)  However, Alberts has failed to allege that Attorneys and Razor intended Alberts individually to be a beneficiary of Attorneys' legal services.  "The clear absence of . . . mutual intent . . . is critical . . . . An attorney's undertaking should be the result of a conscious decision . . . . Here, there is no allegation that [Attorneys] agreed or intended to benefit [Alberts]." *Zenith*, 148 Cal. App. 4th at 1008-09.

Alberts contends that regardless of whether he is a client or nonclient, the "tort of another" doctrine saves his claim for legal malpractice.  (Alberts's Opp'n to Attorneys at 17.)  This doctrine states: "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." *Prentice v. North Am. Title Guaranty Corp.*, 59 Cal. 2d 618, 620 (1963).  However, Alberts must necessarily plead that Attorneys committed a tort for this doctrine to apply; as Alberts has failed to state a claim for legal malpractice, he cannot salvage his counter-complaint against Attorneys through use of this doctrine.

Alberts's cross-complaint fails to state a claim for legal malpractice against Attorneys.

III. <u>CONCLUSION</u>

For the foregoing reasons, Montgomery's motion to dismiss is GRANTED without prejudice and Alberts's cross-complaint is dismissed against Montgomery in its entirety. Alberts may file an amended cross-complaint against Montgomery within thirty (30) days of the

18

entry of this order. Furthermore, Attorneys' motion to dismiss is GRANTED without prejudice and Alberts's cross-complaint is dismissed against Attorneys in its entirety. Alberts may file an amended cross-complaint against Attorneys within thirty (30) days of the entry of this order.

IT IS SO ORDERED.

DATED: February 16, 2012.

_____
UNITED STATES DISTRICT JUDGE